**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| BRIAN JONES, | ) Case No. |
|               Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS** |
| | ) **OF THE FEDERAL SECURITIES** |
| KALEYRA, INC., AVI S. KATZ, DARIO CALOGERO, EMILIO HIRSCH, MATTEO LODRINI, JOHN J. MIKULSKY, KATHLEEN MILLER, NEIL MIOTTO, and KARIN-JOYCE TJON, | ) **LAWS** |
| | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
|               Defendants. | ) |

Plaintiff Brian Jones ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Kaleyra, Inc. ("Kaleyra" or the "Company") and the members of Kaleyra's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Kaleyra to Tata Communications Limited ("Tata") (the "Proposed Transaction").

2. On June 28, 2023, Kaleyra entered into an Agreement and Plan of Merger with Tata Communications and Tata Communications' wholly-owned subsidiary, TC Delaware

Technologies Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Tata Communications will acquire Kaleyra for $7.25 in cash per share of Kaleyra common stock outstanding.

3. On August 18, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Kaleyra stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections, including the most critical metric for Kaleyra stockholders – Kaleyra's unlevered free cash flow projections – relied upon by the Company's financial advisor, Northland Securities, Inc. ("Northland") in connection with its fairness opinion; (ii) the financial analyses that support the fairness opinion provided by Northland; and (iii) the background of the Proposed Transaction.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Kaleyra stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Kaleyra stockholders to vote on the Proposed Transaction is currently scheduled for September 28, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Kaleyra's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Kaleyra common stock.

10. Defendant Kaleyra is a Delaware corporation, with its principal executive offices located at 85 Broad Street, New York, NY 10004. Kaleyra's shares trade on the New York Stock Exchange under the ticker symbol "KLR."

11. Defendant Avi S. Katz has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Dario Calogero has been Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Emilio Hirsch has been a director of the Company at all relevant times.

14. Defendant Matteo Lodrini has been a director of the Company at all relevant times.

15. Defendant John J. Mikulsky has been a director of the Company at all relevant times.

16. Defendant Kathleen Mille has been a director of the Company at all relevant times.

17. Defendant Neil Miotto has been a director of the Company at all relevant times.

18. Defendant Karin-Joyce Tjon has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Kaleyra, through its subsidiaries, provides mobile communication services to financial institutions and enterprises worldwide. The Company provides cloud communications platforms, which manages multi-channel integrated communications services including inbound/outbound messaging solutions, programmable voice and interactive voice response configurations, hosted telephone numbers, conversational marketing solutions, rich communication services, and other IP communications, such as e-mail, push notifications, video/audio/chat, and WhatsApp services. Kaleyra also enables its customers and business partners to connect enterprise software and applications to mobile network operators through application programming interfaces. In addition, the Company offers an extensive set of no-coding cloud-based visual interfaces to program communications to customers across multiple channels.

**The Proposed Transaction**

21. On June 28, 2023, Kaleyra announced that it had entered into the Proposed Transaction, stating, in relevant part:

> NEW YORK and MUMBAI, India, June 28, 2023 /PRNewswire/ -- Tata Communications, a global digital ecosystem enabler, today announces it has entered into a definitive agreement through Tata Communications Limited to acquire Kaleyra, Inc. (NYSE: KLR) to empower global enterprises to offer personalised experiences to their customers. Kaleyra is a global omnichannel integrated communication services provider with a set of proprietary platforms, offering targeted personalisation through messaging, video, push notifications, e-mail and voice-based services, and chatbots.
>
> With this transaction, Tata Communications will gain an industry-proven platform with strong capabilities and scale. Kaleyra brings a stronghold in the business communications market in banking and financial services, retail and digital commerce industries across global markets, in addition to a strong team with expertise in technology, engineering and research & development. Tata Communications will also benefit from Tier 1 carrier connections in the US, ready connectors to third party platforms, and video services without the need for additional software plugins.
>
> The resulting business will leverage Tata Communications large base of enterprise customers worldwide including 300 of the Fortune 500 companies, extensive mobile network operator (MNO) connections and global expansion opportunities. It will benefit from the global digital ecosystem enabler that powers today's fast-growing digital economy in more than 190 countries and territories.
>
> Under the terms of the agreement, Tata Communications has agreed to acquire Kaleyra, Inc. in a cash only transaction, at a price per share of USD $7.25 for a total consideration to Kaleyra shareholders of approximately USD 100 million and the assumption of all outstanding debt. This transaction has been unanimously approved by the Boards of Directors of both Tata Communications and Kaleyra. Consummation of the deal is subject to approval by Kaleyra's stockholders, certain regulatory approvals and other customary closing conditions. Upon closing of the transaction, expected in six to nine months, Kaleyra Inc. will become a subsidiary of Tata Communications Limited. For the full year ended 31st December 2022, Kaleyra reported revenue of USD 339.2 million (USD 353.3 million in constant currency), an increase of 26.7% compared to the full year 2021 (32.0% increase in constant currency).
>
> "With this investment in Kaleyra, we will accelerate our push into the customer interactions platform market and fortify our global CommTech position," said **A.S. Lakshminarayanan, MD and CEO, Tata Communications**. "We are excited

about Kaleyra's remarkable talent and their demonstrated capabilities in next-gen technologies. With this acquisition, we will further build intelligent, intuitive and innovative multi-channel communication solutions to unlock new growth opportunities for our customers."

Commenting on the acquisition, **Mysore Madhusudhan, Executive Vice President, Collaboration and Connected Solutions, Tata Communications** added, "As we further our position in the industry 4.0 world, we are committed to offering heightened targeted communications solutions for enterprises and their customers. We are confident our combined forces with Kaleyra will forge the path for the next wave of intelligence in enterprise communications globally."

**Dario Calogero, Founder and the CEO of Kaleyra** said, "When we launched Kaleyra 24 years ago with my co-founder Simone Fubini, I could hardly envision that our voyage would take us from a small Italian startup, to global expansion, a publicly listed NYSE company, and now working together with a great technology leader like Tata Communications. This is a great day for Kaleyra and our shareholders, and our employees worldwide."

**Dr. Avi Katz, the Chairman of the Board of Directors of Kaleyra**, commented, "I am very pleased with today's outcome, fruits of the dedicated and professional work of the Kaleyra team. It's been a privilege to be part of the Kaleyra team since the onset of their public listing journey in late 2019, and through the follow up significant funding of the company and its meaningful strategic extensions through GigCapital. This transaction represents a significant premium to the last closing share price and delivers significant value creation to all Kaleyra stakeholders. We are excited about the next chapter of the Kaleyra journey, being an essential part of the Tata Communications enterprise."

**Advisors**

Lazard Frères & Co. LLC is serving as Tata Communications' financial advisor and Goodwin Procter LLP is serving as Tata Communications' legal counsel. Willkie Farr & Gallagher LLP is serving as Kaleyra's legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

22.     On August 18, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Kaleyra stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the

fairness opinion provided by the Company's financial advisor, Northland; and (iii) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Kaleyra's Financial Projections*

23. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

24. Critically, the Proxy Statement fails to disclose the unlevered, after-tax free cash flows that the Company was forecasted to generate during the calendar years ending December 31, 2023 through December 31, 2028, relied upon by the Board's financial advisor Northland in connection with its *Discounted Cash Flow Analysis*. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of Kaleyra that Northland performed in connection with its fairness opinion. *See* Proxy Statement at 39 ("Northland performed a discounted cash flow analysis of the Company, by calculating the estimated present value (as of June 27, 2023) of the unlevered, after-tax free cash flows that the Company was forecasted to generate during the calendar years ending December 31, 2023 through December 31, 2028 based on financial projections and estimates of [Kaleyra] management.").

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.*, C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

25. The Proxy Statement includes a summary of certain of Kaleyra management's financial projections for calendar years 2023 through 2028. *See id.* at 40. Yet, this summary fails to include the most important projections – the Company's unlevered free cash flows and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on page 41 and the summary of Northland's *Discounted Cash Flow Analysis* of Kaleyra set forth on page 39 of the Proxy Statement incomplete and misleading, because the Proxy Statement provides a materially incomplete and misleading valuation picture of the Company.

26. In addition, although the Proxy Statement includes a summary of the Company's Adjusted EBITDA for calendar years 2023 through 2028, it fails to disclose the Company's projected Revenue, Gross Profit and Net Income (Loss) for calendar years 2026 through 2028.

27. Further, the Proxy Statement fails to disclose all line items underlying the Company's Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning Northland's Financial Analyses*

28. The Proxy Statement fails to disclose material information concerning Northland's financial analyses.

29. With respect to Northland's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 16.0%.

30. With respect to Northland's *Selected Public Companies Analysis* and *Selected Precedent Transactions* analysis, the Proxy Statement fails to disclose the individual multiples and

financial metrics for each of the selected companies and transactions analyzed by Northland, respectively.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

31.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

32.     According to the Proxy Statement, "[f]rom April of 2022 until September of 2022, the Company entered into confidentiality and standstill agreements with three potential strategic bidders and one financial sponsor to explore potential strategic transactions." *Id.* at 26. Thereafter, "[i]n February and March 2023, the Company entered into two confidentiality and standstill agreements with strategic buyers to discuss the potential sale of [The Campaign Registry Inc.]." *Id.* The Proxy Statement fails, however, to disclose the details of the standstill agreements, including whether any of the standstill agreements are "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

33.     In sum, the omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information," "Fairness Opinion of Northland Securities, Inc.," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Kaleyra will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Kaleyra**

9

34. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

35. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Kaleyra is liable as the issuer of these statements.

36. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

37. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

39. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

40. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Kaleyra within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kaleyra and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

46. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Kaleyra, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 30, 2023          **LONG LAW, PLLC**

By   */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*